We'll proceed to the fourth case, the United States v. Mackin. Mr. Teel.  Good morning, your honors. May it please the court. Andrew Teel on behalf of the appellant, Joshua Mackin. Your honors, at their most basic level, trials are about two things. They are about documents and they are about people. The issue in this case asks this court to determine what the appropriate remedy is when the government fails in its duty to adequately and accurately disclose the former. I would submit that the trial court abuses discretion in crafting that remedy in this case and that Mackin's conviction should be set aside and a new trial ordered. The facts of this case, as they are relevant to the appeal, are largely undisputed. My client was arrested on August 2, 2013, pursuant to a warrant by the Fort Wayne Police Department. At the time of his arrest, it is alleged that he had on him a small silver handgun. Mr. Mackin was a felon and therefore the possession of that handgun would be a violation of federal law, specifically 18 U.S.C. 922. In the process of the discovery in the criminal case, the government disclosed what became defendant's exhibit B. It was what amounted to a continuity of evidence form and that continuity of evidence form had two key parts. The first part was at the top where it identified what the piece of evidence was and the second part was at the bottom where it contained a space for signatures. And those signatures were intended to demonstrate the continuity of evidence of that particular gun. When an officer or an investigator or anyone accessed that piece of evidence, in this case the gun, they would sign. Why was the chain of custody important in this case? The chain of custody was important in this case, Your Honor, because of the nature of the charge. As I said, Mr. Mackin was indicted on being a felon in possession of a firearm and the defense had stipulated to the felony. So the only issue that remained was essentially the weapon. And I will concede the government makes much that the defense was weak. I will concede that there was not a whole lot of facts that the defense had to go with. But the one thing we did have, according to the documents that had been provided by the government, was that there was a serious issue with the chain of evidence with this gun. And that is important in this case. Well, that's what I'm asking. What was the issue? Specifically, there was no indication that there was a chain of evidence. Again, as I said, the purpose of the bottom part of that form is to indicate where that gun... Why does it matter? The gun had a serial number, so there's no question that this was the crime weapon, right? Well... I mean, the serial number is the same. It doesn't make any difference if it was this gun or another gun. It does, and I'll tell you why. To your point first, Your Honor... I thought that was... And I'll tell you why it makes a difference. Because one of the elements of the crime is that the gun had to be an interstate commerce. And the way that the government proved that in this case was to have an agent for the ATF run that particular gun through the interstate nexus to determine whether or not that gun had, in fact, crossed an interstate commerce. So it's important... Counsel, are you aware of any cases... I'm not. Maybe you are. In which guns are not an interstate commerce? I am not familiar. I suppose, Your Honor, that the good example would be assume that the gun was manufactured in a specific state. Well, I understand that you can make assumptions, but I'm... That's... You go ahead. That was a hypothetical. But I'm a long time on the bench, and I don't recall a gun never being an interstate, not an interstate commerce. But to your point, Your Honor, it is, in fact, an element of the crime in this case that the government was tasked with proving. And again, the way that they did that was to have an ATF agent run that particular gun through the interstate nexus. And so it is, in fact, vitally important in this case that the gun that they alleged they pulled off my client was, in fact, the gun that was tested. Right. I get that. But the serial number was matched. So whether the signatures appeared on the chain of custody document or not, it's the same gun being tested because it's got the same serial number. It's interesting that you had mentioned the serial number. Again, there was an issue in this case also with the serial number. In the indictment. In the indictment. That was fixed. Well, it was fixed approximately a week prior to trial by the government. Yes, they indicated that it was a Scribner's error. They filed a motion to correct. It's still... In terms of the testimony of the witnesses, the arresting officer, who also was responsible for inventorying the gun and creating this, what they call a continuity document, and the ATF officer, their testimony is perfectly consistent about the serial number, right? I believe that it is, yes. Certainly the investigating officer identified the gun that was presented at trial as being the gun that he obtained. Right. So, I mean, even assuming there was a Rule 16 violation here that they produced a copy that didn't have the signatures on and the original materialized during trial, what's the prejudice here? Certainly. Your Honor, again, there's no doubt, and I would concede there's no doubt that the investigating officer identified that gun as the gun that appeared. However... And the ATF, I mean, we know that he tested that same gun, right? Because it's got the same serial number. Yes. So both parts of the elementary equation here for 922G1 conviction are present. Yes. Again, that testimony was not elicited until trial, I would note. And again, what we're really... I think there's two issues here when you're really looking at the prejudice. And one of them, and I think there's a whole line of cases they recited in our brief, is that part of that, part of the discovery violation and the prejudice analysis can be whether it prejudices a defendant's intelligent right to evaluate his plea options. And so I think to look at it as what testimony was actually elicited at trial then sort of jumps that particular point. Because as I stated to the district court when we were at sidebar, when government finally produced the accurate copy of the continuity slip, had we in fact had a copy of the continuity slip, we would have known as a matter of fact that the continuity argument, which in effect became, once the Scrivener error was replaced, the sole defense at trial was in fact a non-starter. And at that point in time, Mr. Macon could have intelligently identified his plea rights. And that is not an issue that is... When we talk about prejudice from the standpoint of what occurred at trial and these sorts of undue surprise and those sorts of things, those things are, to some respect, sort of hypothetical. The plea prejudice is not hypothetical at all. Because the United States sentencing guidelines very well state out what the prejudice was in this case. Because had Mr. Macon been able to intelligently identify his plea options, known that his only defense was a non-starter, he would have pled. This was the representation that I made to the district court at sidebar. And it does not take any feat of legal acumen to determine what that prejudice is. Because all we need to do is go to the guideline ranges. And in this case, had he only gotten the two-level reduction for acceptance or responsibility, I'm not even talking about the three-level, but simply the two-level reduction, we're talking about at a minimum 15 months in his sentence. Now, your Honor, that is very real and tangible prejudice. That is a year out of his life. And it does not hinge on what the ATF agent did or what the investigating officer did. It hinges entirely on the Rule 16 violation. And, again, I think that's what the entire line of cases that we cited in the brief stand for, is that the plea prejudice, in some respects, is just as important as the actual trial of defense. So, Mr. Teel, if you were successful on this appeal, you would be seeking the two-level reduction in a plea setting, is that right? That would most likely be the outcome, yes, Your Honor. I'm not asking you to commit to it, but I'm just trying to see where we are practically in this case. Right. And I think, to your point, I mean, certainly, now knowing what the evidence will be at trial, this would be a very difficult case to try. But I think if we go and we look at, I believe it's the United States v. Pascal case, the outcome of that second trial is not the key analysis. In fact, in that case, they called the evidence that should have been produced by the government to be the nail in the coffin for the second trial. And that may very well be what we're talking about here. That may be the proverbial nail in the coffin. But, again, that's not the analysis. It's not whether I can win the new trial. It's whether the Rule 16 violation caused significant prejudice in the original trial such that a new one is necessary. Is a chain of custody document always disclosable or required to be disclosed under Rule 16? I think in this case, one, that there was a specific request that was sent to the government for notes and reports of police. Well, right, that's the generic request. It is. Right, and that's why my point goes more to the rule that you're looking for, which is that chain of custody is always important. And so we need to have the accurate documents. That's the rule of law that would emanate from this case if we find for you. I don't think that it's necessary to say that the chain of custody is always important. Right. I mean, we have to make a materiality determination in order to determine whether there's a Rule 16 violation, right? Yeah, and I see that I'm in my rebuttal time, but I do want to respond to this because I think the important point here is not, frankly, my client would have been in a better position, I think, had the continuity form never been produced in the first place. Because then we wouldn't be in the situation where both he and I have identified a real problem with the continuity. Okay, so you got sucker-punched. We did, and that's exactly right. And I don't mean to put any bad motive or anything on the government. I don't believe that this was intentional to any extent. You had two Fort Wayne City police officers make the arrest. These weren't federal agents. No, they were Fort Wayne police officers. That's correct. And so I don't think that this was anything. I don't think the government did anything wrong here. But this was trial by ambush. This was six hours into the trial, and only then do we actually know what the evidence is. I think at that point in time, at the very least, a new trial was necessary. Thank you, Your Honors. Thank you, Mr. Chiu. Ms. King? Thank you. Your Honor, may it please the Court, LaVita Morris King, on behalf of the United States, the appellee. The district court did not abuse its discretion in denying Mackin's motion for new trial, and the government did not violate Rule 16, as it had no reason to suspect that Mackin would contest the chain of custody or that the continuity slip would be considered material. How did you go about proving that the gun was used in interstate commerce? The ATF agent testified that the serial number was used in determining the interstate nexus. The arresting officer, one of the arresting officers, Officer Brown, was the first witness to testify. He testified that the firearm, with the same serial number that the ATF agent testified about, was the same firearm that was recovered from Mr. Mackin at the time of his arrest. You would have normally used this same identification procedure had it originated with federal officers as opposed to state or city officers. In other words, your chain of custody process in federal court and federal agents is not the same as it is in the state. Well, let me answer it this way, Your Honor. Regardless of who the arresting officer is, if the serial number is on the firearm... I understand that. What I'm saying is, just mechanically, the procedure is not the same. It's the difference between how ATF protects the custody or identifies it with a serial number and what a state officer will do in state court. Well, Your Honor, I believe that the state officer, as he did in this case, recorded the serial number in his report. He also made that documentation on the continuity slip, Exhibit B, and I believe that also a federal agent would also make note of the same serial number from the recovered firearm. I'm apparently not phrasing it very well, so go ahead with your argument. Yes, sir. So the testifying officer recovered the firearm, recorded the firearm serial number in his report, which was provided to Mackin pretrial. That same serial number was recorded on the continuity slip. Right, but the report that was disclosed didn't have the signature, so it didn't actually trace the chain of custody of the document, as I understand it, right? It was missing signatures of the ATF agent, et cetera, when the gun went out for testing. Exhibit B, correct, did not have the signatures. Right. So the document that was disclosed in discovery is incomplete. It's a copy. That's correct. From when the gun was inventoried. It doesn't reflect the transactional history of the gun. That is correct, Your Honor. It does not reflect the chain of custody, which is not relevant when the testifying officer identifies that firearm. Well, it's not that it's not relevant. It's not a precondition to admissibility. It is relevant in some cases. Chain of custody can be relevant, not always. That is correct. It depends on what was done with the evidentiary sample. So chain of custody can sometimes be very important. That is correct. And you laid a foundation for the admissibility of the gun here that included the incomplete continuity statement. So you can't rest on the argument that you weren't going to rely on this in your case in chief. No, Your Honor. The government utilized the defendant's Exhibit B as a recollection for the officer. The government did not intend to put in evidence the continuity slip. Well, right, but if you're using it to refresh his recollection about how he inventoried the gun and to refresh his, I mean, he didn't have the serial number memorized, right? He read the serial number from the continuity statement, even though you didn't admit it into evidence. That was done by defense counsel. That is correct, Your Honor. And the officer also had it notated in his report, that same serial number. Right, but you used this document to lay a foundation for the admission of the gun, right? The officer used it for his recollection. That is correct, Your Honor. Because you asked him to. That is correct, Your Honor. Okay, so you can't say that this wasn't part of your case in chief, even though you didn't admit it as a government exhibit. That is correct. We did not move it for admission of the exhibit. So this all turns on materiality, right? Correct, Your Honor. And we do not believe that the continuity slip was material, Your Honor. The defendant must demonstrate pre-trial that the disputed evidence, in this case Defendant's Exhibit A, would have enabled him to alter the quantum of proof in his favor. And he cannot and simply has not been able to do that. Well, if it calls into question the jurisdictional element, why isn't that criteria met? The document that was provided was incomplete. It didn't show the chain of custody of the gun when the ATF agent took it out for testing, right? That is correct, Your Honor. So that calls into question the government's proof on the jurisdictional element, or at least it marginally does. I mean, the serial number matched, so we've got no problem on that score, but at least he's got a plausible trial issue, right? Whereas after the belated disclosure of the real continuity report, that issue evaporates, and now he's stuck and has forgone whatever plea opportunities he had. Your Honor, I'll remind the court that during pretrial, the defendant had filed a duress theory, and that was filed approximately a week before trial. So his proposed theory advance at that point was, I possess the firearm, but I did so under duress. The government filed a motion in limine to hold that information, as it was not relevant. The court agreed, granted the government's motion in limine, and that the defendant could, if appropriate, approach the court if he seek to advance that theory. He did not. So the government had no idea, at least at that point, just prior to trial, that the defendant felt like the chain of custody was relevant, was material to his defense. Ms. Morris-King, I appreciate. He lost the motion in limine, so I guess what was presented to him was, you can raise it again. Is that right? That is correct. So at that point, the government's comfortable that that's not going to be the theory in the case, right? I mean, you assume you've been successful on the motion. You would be probably successful before the same jurist again. Assuming so, yes, Your Honor. So the government then wonders, why are we going to trial, right? What's the theory? And the only theory he has is the one we're talking about today. I assume that's what the government also recognized. And what did the defendant say in opening statement was his theory of the case? Well, Your Honor, it appeared to be a combination of the government has to prove certain things to you. Right. And those being the elements of the offense. So the government was on notice, was it not, that the only thing that could be challenged in this case is, is this the real gun that's in question? And two, was there anything done to the gun from the time of arrest till it got to the court? Your Honor, I respectfully indicate to the court that no. At that time, the government was not aware that the defendant was seeking to go down that route. Well, you know, it's hard to see what other route the defendant had here. I mean, the defendant must have thought there was a technicality that he could win on. Otherwise, he wouldn't have risked what would occur if he went to trial and lost, right? I mean, as you start the trial on day one, what does the government think is the theory of the defense? Well, Your Honor, oftentimes defendants can go to trial to make sure that the government is able to prove what it's alleged in its case. No question. No question. And so in that respect, when we turn to whether the court abused its discretion, we submit that it did not. And when this was raised, Your Honor, the court, the district court, just offered remedies which would allow the defendant to, and I see my time is up, Your Honor, but if I could finish. You may continue. Thank you. The defendant was allowed to introduce both continuity slips into evidence, was able to make full use of that exhibit at trial, defendant's exhibit A, to fully cross-examine the witnesses in all respects. And so we believe that the court provided a full opportunity for the defendant to have a fair trial in this case. Well, but those remedies were not directed at the relevant prejudice here. And we don't believe that there was prejudice to the defendant, Your Honor, if I might. The defendant had the full opportunity after the exhibit was produced, up until sentencing time, to argue that he would have pled guilty, and he did not. The serial number was included in the indictment, was it not? The serial number was included in the forfeiture allegation of the indictment. Well, that was part of the indictment. Correct, Your Honor. Well, and the very first prejudice argument at sidebar was that, Judge, we wouldn't even be here, or we might not even be here if we had had the right document, because this was our only trial issue. That argument was made from the get-go in support of the mistrial remedy. So I don't know how you can say that it wasn't made. Well, Your Honor, we do feel that had the defendant wanted to plead guilty, he certainly could have advanced it at some point. Obviously, but he didn't have the full panoply of information, because the Fort Wayne Police Department messed up. I see my time is up. I thank the Court. Thank you very much. Thank you. Mr. Teel. I believe my time is up as well. You may have a minute for rebuttal. Thank you. Just briefly, Judge Sykes, you're absolutely right. I mean, the argument, the relevant prejudice argument was made immediately at sidebar. That was the very first thing I said, we would not be here had we known the facts as they were, as opposed to the facts as they were represented. So that is clearly the case. Mike, you knew from the, you saw the, you'd seen the indictment, right? We had seen the indictment, yes. And the serial number in the indictment matched the serial number of the weapon, right? Not the original indictment, no. The indictment was not actually corrected until a week prior to trial. The original indictment and the original forfeit trial had the wrong serial number, yes, Your Honor. And that was, in fact, an additional issue that we had intended on raising until the government corrected that. When did they correct it? Approximately one week prior to trial, Your Honor. So we were not talking about a significant period. Okay. So the indictment, as I see it here, was wrong, or the serial number was wrong. That's right. How did the correct continuity document materialize at trial? Did the officer just sort of pull it out of his back pocket or what? That's an interesting question. I had asked, I presented a question to the officer. I said, Officer Brown, would you agree with me that this continuity report contains none of the signatures that you just discussed? And on my way back to the podium, he said, no, I would not agree with that, which surprised me, obviously, since I had seen it. And he said, well, in fact, this is a copy. There's an original in the file. At which point I looked to the government's table, and I see the Assistant United States Attorney and the FBI agent rifling through their file, at which point it is then the Assistant United States Attorney asked to approach. It is then presented to me at sidebar. That is the first time this was ever seen by anyone, either the defendant or the defense team. So it was in the case agent's file. It was indeed. So it's not on the Fort Wayne Police Department. Maybe. Maybe. I don't know. To be quite honest, Your Honor, I don't know. When did this switch from the Fort Wayne Police to the U.S. Attorney's Office? That, again, he was arrested on the 2nd of August. The indictment came down on the 28th of August. So somewhere in that period of time, it was transferred from the Fort Wayne Police Department to the relevant case agent. So I see that my time is up, and I thank you for your time, Your Honor. Thank you. Thank you, Mr. Brown.